Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 2947 | **DATE** | 5/19/2000 |
| **CASE TITLE** | Weaver vs. Hollywood Casino | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Ms. Weaver is entitled to damages in the amount of $20,000, for pain and suffering. Ms. Weaver is not entitled to attorney's fees. Judgment is therefore entered in favor of plaintiff and against defendant in the amount of $20,000.00. Enter Memorandum Opinion and Order. Any pending motion in this case is terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 2 2 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 5/19/2000 | |
| | | | date mailed notice | |
| MPJ | courtroom deputy's initials | | MPJ | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBBIN WEAVER,                    )
                                  )
        Plaintiff                 )
                                  )
    v.                            )   No. 98 C 2947
                                  )
HOLLYWOOD CASINO - AURORA, INC.,  )
                                  )
        Defendant.                )

## MEMORANDUM OPINION AND ORDER

Plaintiff Robin Weaver brought this action against Hollywood Casino - Aurora, Inc., under the Jones Act, 46 U.S.C. § 688 *et seq.* Ms. Weaver also asserts damages under general maritime common law. Ms. Weaver alleged that, while employed by Hollywood Casino, she was injured when she attempted to lift a 1,000 pound bank from an employee onto which the bank had fallen. I held a bench trial following discovery.

### Jurisdiction

Federal jurisdiction depends on the plaintiff's ability to invoke the Jones Act. The Seventh Circuit defines someone as a seaman for Jones Act purposes if (1) the person injured had a more or less permanent connection with a vessel in navigation, and (2) the person injured made a significant contribution to the maintenance, operation, or welfare of the transportation function



of the vessel. *Johnson v. John F. Beasley Constr. Co.*, 742 F.2d 1054, 1063 (7th Cir. 1984). It is not disputed that Ms. Weaver had a more or less permanent connection with, and made a significant contribution to, the casino boat. The issue here is whether the boat is a vessel. The defendants argue that no vessel the primary purpose of which is gaming can be a Jones Act vessel. They cite *Davis v. Players Lake Charles Riverboat, Inc.*, 74 F. Supp.2d 675, 676 (W.D. La. 1999) ("[T]he movement of a casino Riverboat over navigable water would be serving a purpose that is merely incidental to its primary function as a gambling facility."). The Fifth Circuit, however, has upheld a Jones Act class action for casino boat workers in *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999). So I do not read *Davis* to say that no gaming ship can be a Jones Act vessel. It rather holds this particular ship, for special circumstances applicable in that case, was a mere gambling facility. Because the defendants have not come forward with any evidence of special circumstances that would defeat Ms. Weaver's jurisdictional showing, I reject their argument and conclude that I have jurisdiction under the Jones Act.

## Findings of Fact[1]

On May 13, 1995, Robin Weaver was working as a slot machine attendant on the "City of Lights I," a gambling boat owned by Hollywood Casino. The City of Lights had recently been remodeled. One day earlier, a bank, which is a moveable chest containing drawers which are filled with coins and tokens, had fallen over. Hollywood Casino was aware of this incident and knew that the banks were unstable. It was in the midst of bolting them to the boat but had not finished bolting all the banks when the incident about which Ms. Weaver complains occurred. This incident also involved a bank, which weighed between 1,000 and 1,500 pounds, which fell over onto the leg of another Hollywood Casino employee. Ms. Weaver, along with others, came to the employee's aid, and helped raise the bank off the injured employee. The bank was later found to have been resting on uneven floor. It was not bolted to the floor or any wall. The design of the bank (all of the drawers could be opened at once), the fact that the bank was not bolted to the floor of a vessel that itself moved, and the fact that the bank was located on uneven flooring either singly or together led to the

---

[1] Any finding of fact that includes a conclusion of law or vice versa shall be considered as such.

3

accident in which the bank fell over.

Ms. Weaver injured her left wrist while helping to push the bank off the employee's foot. She felt pain within 45 minutes of the event and went to the hospital following the end of her shift. Her wrist was swollen and a splint applied. She did not return to the same job following her return to the boat as she was restricted in what she could lift with her left hand. She later worked in sales and in accounting, and received awards as an outstanding employee, but was fired in 1999. The cause of her termination is the subject of a separate lawsuit. She had injured her wrist on May 5, 1995 in an accident for which Hollywood Casino is not alleged to be responsible. She did not see a physician about that injury. She had also had earlier injuries, including a broken wrist in third grade, and an injury to her wrist in 1992.

Ms. Weaver was examined by a board certified orthopedic physician, Dr. John Showalter, in January, 1996, to whom she had been sent by her first physician. Dr. Showalter determined that at that time Ms. Weaver exhibited normal movement in her left wrist. Dr. Showalter administered a series of tests to determine Ms. Weaver's grip strength and concluded that her strength was normal (and that she attempted to conceal her actual strength). Dr. Showalter did find some irritability of Ms. Weaver's ulnar nerve at

the elbow level. The ulnar nerve at the wrist level was normal, however. There was no pathology. He did conclude that she had some wrist pain, possible triquetrolunate ligament disruption, with ulnar-positive variance. She was advised to increase her mobility and to have an injection in the area where she showed symptoms. Dr. Showalter examined Ms. Weaver a second time in November, 1996. She reported having followed his advice. At this time, Dr. Showalter's examination indicated Ms. Weaver's ulnar nerves in both her wrist and elbow were normal. He also concluded that if there was any injury to her elbow it was not caused by the accident in May, 1995.

Ms. Weaver's primary orthopedic physician, Dr. Scott O'Connor, also testified by deposition. Dr. O'Connor saw Ms. Weaver for the first time on June 1, 1995. He diagnosed her injury as a wrist sprain. He saw her again at various times during 1995. He concluded that her range of motion was normal by December, 1995, and that if she had any nerve damage it was "extremely" mild, and that it was unlikely that the May 13, 1995 injury resulted in any significant damage to the ulnar nerve. In 1998, Dr. O'Connor saw Ms. Weaver again and concluded that she had some clawing on her small finger of her left hand, an indication of an ulnar injury. He could not say whether it would have been caused by the 1995

injury at Hollywood Casino. He concluded at that time that she did not have any significant wrist problems. He did recommend surgery for a cubital tunnel condition of her elbow.

Defendant's witness, Dr. Alvin Kanter, also an orthopedic surgeon, testified that the records he reviewed, which showed no reported injury to Ms. Weaver's elbow in May, 1995, mean that if she developed an ulnar injury that was not diagnosed until 1998, it could not have been caused by the May 13, 1995 accident.

Ms. Weaver saw another physician, Dr. Gary Skaletsky, a neurological surgeon, in August, 1999. He diagnosed her to have a compressive neuropathy of the ulnar nerve at the elbow, also referred to as a cubital tunnel syndrome. He did testify that he believed the injury was related to the May 13, 1995 accident. However, he later testified that his opinion was based on Ms. Weaver's representation to him that the only time she had suffered trauma to her left arm was at that time. He agreed that an injury at some other point could have resulted in the later cubital tunnel syndrome. He also testified that the syndrome can be caused by non-traumatic events such as leaning with an elbow on the side of a car door while driving.

I conclude that plaintiff suffered a sprained wrist in the May 13, 1995 accident. She did not suffer a chronic wrist injury or an

ulnar nerve injury. Her current need for surgery is unrelated to the 1995 accident. Most of the physicians' findings are consistent. I find no reason to believe that Dr. Showalter had any reason not to credibly report his conclusion that Ms. Weaver was not accurately reporting her strength at the time he did tests that indicated her real strength was greater than reported. I found Dr. Kanter's testimony credible as well.

## Conclusions of Law

Ms. Weaver was a seaman employed by a maritime vessel engaged in maritime activity on May 13, 1995, and therefore can maintain an action against her employer under the Jones Act or general maritime law.

Ms. Weaver has proved by a preponderance of the evidence that Hollywood Casino's negligence caused the bank to fall over, or alternatively, an unseaworthy condition, which is causally related to a wrist injury sustained by her while lifting the bank off another employee.

Ms. Weaver did not prove a causal connection between the May 13, 1995 accident and injury and her current condition of cubital tunnel syndrome of her elbow.

7

Ms. Weaver did not prove a causal connection between the May 13, 1995 accident and injury and any chronic wrist injury.

Ms. Weaver proved that she suffered a wrist sprain as a result of the May 13, 1995 injury.

Ms. Weaver failed to prove any maintenance and/or cure due and owing that was not paid.

Ms. Weaver is entitled to damages in the amount of $20,000, for pain and suffering. Her medical bills related to the incident have previously been paid by her employer.

Ms. Weaver is not entitled to attorney's fees because Hollywood Casino was not guilty of willful, capricious or arbitrary conduct in denying her claim for surgery that was not related to the May 13, 1995 accident.

ENTER ORDER:

_____
Elaine E. Bucklo
United States District Judge

**Dated:** May 19, 2000

Copies are being mailed to:

Kim E. Presbrey
Presbrey & Amoni
821 W. Galena Blvd.
Aurora, IL  60506

Attorney for Plaintiff

Kim R. Kardas
Belgrade & O'Donnell
311 S. Wacker Drive, #2770
Chicago, IL  60606

Attorney for Defendant